# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | HARRY D. LEINENWEBER | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1064 | **DATE** | *January 14, 2003* |
| **CASE TITLE** | Carlos Medera, #B-71886 vs. Assistant Warden Vincent, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the accompanying Memorandum Opinion and Order: (1) The defendants' motion to strike [#43-1] is denied. (2) The clerk is directed to terminate the defendants' motion for an extension of time to file a reply brief [#43-2], as that motion was previously granted. (3) The plaintiff's motion for leave to amend [#45], which the court is treating as a motion to supplement his brief opposing summary judgment, is granted. (4) The defendants' motion for summary judgment [#27] is granted in part and denied in part. The plaintiff may proceed on his retaliation claim; however, at the close of the case, the clerk is directed to enter judgment in favor of the defendants and against the plaintiff on his conditions and due process claims pursuant to Fed. R. Civ. P. 56. (5) The plaintiff's motion to reconsider appointment of counsel [#36] is denied. (6) The plaintiff is ordered to show good cause in writing, within twenty-one days of the date of this order, why his equal protection claim should not be dismissed pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies as to that claim prior to bringing suit.

■ **For further detail, see attached Memorandum Opinion and Order.**

| | | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | JAN __ 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | 47 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | CLERK, | | | |
| | | 2003 JAN -6 AM 10:05 | date mailed notice | | |
| mjm | courtroom deputy's initials | FILED-ED TO | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JAN 1 4 2003

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

| | | |
|---|---|---|
| CARLOS MEDERA, #B-71886, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 02 C 1064 |
| | ) | |
| ROBERT GRIFFIN, et al. | ) | HON. HARRY D. LEINENWEBER |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a state prisoner, has brought this *pro se* civil rights action pursuant to

42 U.S.C. § 1983. The plaintiff claims that the defendants, two officers at the Stateville

Correctional Center, violated the plaintiff's constitutional rights by retaliating against him

for his grievances, by denying him due process and equal protection, and by subjecting

him to cruel and unusual conditions of confinement.[1] For the reasons stated in this order,

the motion will be granted in part and denied in part.

As preliminary matters, the court must address motions concerning the summary

judgment briefs. The clerk is directed to terminate the defendants' motion for an

extension in which to file a reply brief. That motion appears as a pending motion on the

court's docket although it was previously granted by Minute Order of November 14,

2002. The defendants subsequently filed their reply brief. The defendants' motion, in the

---

[1] By Minute Order of February 19, 2002, the court dismissed the complaint as to
all other claims, along with one defendant sued in his supervisory capacity.

alternative, to strike the plaintiff's response to their motion for summary judgment is denied as moot. Although the plaintiff's brief was not in compliance with Local Rule 56.1 or the court's cautionary instructions, *see* Minute Order of September 3, 2002, the court has considered the plaintiff's response. Nevertheless, the plaintiff is advised for future reference that even *pro se* litigants must comply with basic filing requirements. The plaintiff's motion for leave to amend, which the court construes as a motion to supplement his opposing brief, is granted. The court has taken into account the additional affidavit of inmate witness Luis Macedo.

Turning to the summary judgment motion itself, the standards governing such motions are familiar: summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Prime Northgate Plaza Ltd. Partnership v. Lifecare Acquisitions Corp.*, 985 F. Supp. 815, 817 (N.D. Ill. 1997). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 393 (7th Cir. 1997), *cert. denied*, 523 U.S. 1118 (1998).

Disputed facts are material if they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). The inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (citations omitted).

## FACTS

The plaintiff is a state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. (Complaint, p. 2, Section I, "Plaintiff(s);" Defendants' Exhibit 13, "Inmate Occupancy History Inquiry.") The defendant Robert Griffin is a unit superintendent at Stateville. (Defendants' Exhibit 3, Affidavit of Robert Griffin, ¶ 5.) The defendant Peter King is a lieutenant at the prison. (Defendants' Exhibit 2, Affidavit of Peter King, ¶ 2.)

The following facts are uncontested for purposes of this motion **(disputed facts are in bold print)**: On or about July 7, 2000, the plaintiff was placed in Stateville's Unit

D, cell 333. (Complaint, p. 6.)[2] The light switch did not turn on the light in the cell. (*Id.*) The plaintiff went through the "chain of command," complaining to the named defendants and others that his overhead light did not work. (*Id.*)

**The defendants maintain that, although the cell itself had no working light, large overhead light fixtures flooded the entire cell area with light. (Griffin Affidavit, ¶ 18.) Cell 333 has open bars which allow the overhead lights to illuminate the interior of the cell. (*Id.*, ¶ 19; see also Defendants' Exhibits 16A and 16B, photographs of the area in question.) The plaintiff maintains, however, that his tier and cell were situated in such a way that ambient light in his cell was almost non-existent. (Defendants' Exhibit 1, Deposition of Carlos Medera, *tr.* at 17.)**

Over seven months later, on February 18, 2001, the plaintiff filed a grievance complaining that the staff had failed to rectify the situation. (*Id.*; *see also* Unmarked Grievance attached to Complaint.) The counselor responded, "Per C/O Weck, orders have been submitted and electrician notified. A/W Vinson contacted per Supt. Griffin; hopefully lighting will be restored in next 24 hours." (*Id.*)

**On February 18, 2001, King allegedly went to the plaintiff's cell and said, "Look, you Spic, by you writing a grievance it will not make me fix your light." (Complaint, p. 6.) The plaintiff reported King's remarks to Griffin, who responded, "You <u>are</u> a Spic–you ain't no Caucasian." (*Id.*) Both Griffin and King have**

---

[2] The complaint is in narrative form rather than broken up into separate, numbered paragraphs.

submitted affidavits denying that they ever referred to the plaintiff or any other inmate as a "Spic." *See* King Affidavit at ¶¶ 4-6; Griffin Affidavit, ¶¶ 6-9. The plaintiff, in turn, has submitted affidavits from fellow inmates confirming that the defendants routinely made disparaging, anti-Latino remarks. (Document numbers 41 and 42, Affidavits of Inmates Carlos Espinoza and Elia Gomez.)

On an unspecified date, the plaintiff wrote a follow-up note to his counselor. (Unmarked Exhibit to Complaint.) The plaintiff advised her that although the light was supposed to have been fixed within twenty-four hours, two more months had passed without any effort at repair. (*Id.*) The counselor forwarded the plaintiff's letter to Assistant Warden Vinson, adding the notation, "Can we get a light for this cell? It has been out since July 2000." (*Id.*) The plaintiff also apparently filed a second grievance regarding the inadequate lighting, which was denied as moot when he was moved to a different cell. (*See* complaint at p. 6; attached exhibits.)

After the plaintiff filed the second grievance, Vincent, Griffin and King went to his cell. Griffin purportedly told the plaintiff, "Listen, Spic, I am going to have you moved, but only after I hear from the Grievance Officer–and don't expect a better cell." (Complaint, pp. 6-7.)

On May 29, 2001, the plaintiff was placed in Cell 732 in the same unit. (Grievance Officer's Report, attached as Unmarked Exhibit to Complaint.) According to the defendants, Cell D-732 was not a "condemned" cell. (Griffin Affidavit, ¶ 21.)

**However, the plaintiff maintains that no one has been placed in the cell since he was housed there. The defendants further maintain that the cell's water worked "except for minor repairs and leaks from time to time." (Griffin Affidavit, ¶ 21.) The plaintiff and his cellmate, in contrast, assert that the cell had no water whatsoever. (Complaint, p. 7; *see also* Espinoza Affidavit, ¶ 2.) When the plaintiff complained to King, he supposedly said, "Spics do not have running water in Central America, so why should you expect water here?" (Complaint, p. 7; Espinoza Affidavit, ¶ 4.)**

The plaintiff spent the summer months without running water and claims to have suffered from dehydration. (Complaint, p. 7.). However, while the plaintiff was confined in Cell D-732, he was able to drink water at least at meals and possibly in the exercise area. (Defendants' Exhibit 1, Deposition of Carlos Medera, *tr.* at 25-26.)[3] The plaintiff was also able to buy bottled water in the prison commissary and was permitted to shower once a week. (Grievance attached as Unmarked Exhibit to Complaint.) During the time period in question, the plaintiff had sufficient strength to play basketball and handball and lift weights. (Medera deposition, *tr.* at 25.)

The plaintiff filed a grievance regarding the lack of water on October 24, 2001. (Complaint, p. 7; Grievance attached as Unmarked Exhibit.) On October 28, 2001, the counselor denied the grievance as moot because the plaintiff had been moved to another cell, D-747. (*Id.*)

---

[3] The plaintiff's deposition does not make clear whether some or all of the drinking fountains in the recreation yard were broken.

**On September 4, 2001, the defendant King warned the plaintiff, "I am going to walk you to segregation as soon as I figure out a way." (Complaint, p. 7.)**

Five days later, on September 9, 2001, the plaintiff was placed on investigative status and moved to administrative segregation. (Grievance Officer's Report, attached as Unmarked Exhibit to Complaint.) The plaintiff received no disciplinary ticket and claims to have broken no rules. (Complaint, p. 7.) However, an incident report dated September 9, 2001, written by an Officer Slaughter stated:

> On the above date and appx. time c/o Terry informed this Investigator that he (Terry) observed Inmate Swift, R00632, digging in the mud in the D & C small yards. This Investigator and Major Quijano conducted a search of mentioned area and discovered two (2) metal rods; one appx. 5½ inches in length and the other appx 5¾ inches in length. During this search this Investigator observed inmate Swift exchange shoes with inmate Medera, B71886. Both inmates were escorted to segregation. End of report.

(Defendants' Exhibit 14A, Incident Report.)

Another incident report by a tower officer corroborated:

> ON ABOVE DATE AND APPROX. TIME WHILE D HSE 7 GALLERY INMATES WERE ON THE SOUTH SMALL YARD, THIS R/O FROM TOWER 12, OBSERVED ABOVE INMATE [SWIFT] STOMPING IN THE MUD AND REACHING DOWN FOR APPROX. 15 MINUTES. THIS R/O NOTIFIED C/O BROOKER OF THE UNUSUAL SITUATION. AT APPROX. 1:15 PM MAJOR QUIJANO AND C/O SLAUGHTER ARRIVED TO THE SAID YARD TO SEARCH IN THE IMMEDIATE AREA WHERE SAID INMATE WAS STOMPING. C/O SLAUGHTER DISCOVERED ONE 5½" SCREW LIKE ROAD AND ONE 5¾" SCREW LIKE ROD PLANTED IN THE MUD WHERE SAID INMATES' FOOT PRINTS WERE LOCATED. SAID INMATE ALONG WITH ONE OTHER INMATE WERE HANDCUFFED AND ESCORTED TO SEG BY SAID MAJOR AND OFC. SLAUGHTER. ABOVE CONTRABAND WAS SEIZED AND INVENTORIED WITH INVESTG. ALL AUTHORITIES WERE NOTIFIED.

(Defendants' Exhibit 14B.)

An investigative report issued the same date notified the plaintiff that he was being placed on investigative status pending charges of violating prison rules 104 (Dangerous Contraband) and 406 (Trading and Trafficking) in connection with the above-mentioned incidents. (Defendants' Exhibit 14C.)

The plaintiff was released from segregation thirty-seven days later, but only after he went on a hunger strike and demanded to speak to the Crisis Team. (Complaint, p. 7.) An investigator issued a memorandum dated October 9, 2001, concluding that there was insufficient evidence to charge the plaintiff with a prison infraction. (Defendants' Exhibit 15, Memorandum from Internal Affairs Unit to Adjustment Committee.)

On September 28, 2001, the plaintiff sent the facility's medical director a request to see an eye doctor. (Defendants' Exhibit 7, letter from plaintiff to Dr. Smith.) The plaintiff complained of headaches and an ability to focus when he read. (*Id.*) On October 11, 2001, the plaintiff had a consultation with an optometrist. (Defendants' Exhibit 4, Affidavit of Thomas Bialecke, O.D., ¶ 5.) Although the plaintiff had 20/20 vision both "far and up close," Bialecke prescribed low power reading glasses. (*Id.*, ¶ 6.) Bialecke suspected that the plaintiff was merely suffering from "lower accommodation" (an evidently temporary condition brought on by detailed work or reading over a long period of time). (*Id.*) According to Bialecke, "[b]ased upon a reasonable degree of medical certainty," the absence of a light fixture in the plaintiff's cell would not have "caused or amplified in any way" the plaintiff's need for eye glasses. (*Id.*, ¶ 7.)

Upon his release from the segregation unit, the plaintiff returned to the D Unit, where he was placed in cell 747. (Complaint, p. 8.) Although the plaintiff's cellmates were issued sheets, pillow cases and blankets, the plaintiff received no bedding. (*Id.*) **The plaintiff asked the defendant King why he had no bedding and was told there were no sheets for him. (*Id; see also* Affidavit of Inmate Luis Macedo, attached to Plaintiff's Motion to "Amend.")** The plaintiff filed another grievance on October 25, 2001. (*Id.*; *see also* Grievance Attached as Unmarked Exhibit to Complaint.) In response to urging from the plaintiff's counselor, King gave the plaintiff sheets and a pillow; however, he refused to provide the plaintiff with a blanket. (Complaint, p. 8.) The plaintiff had to file another grievance in order to obtain a blanket. (*Id.*; *see also* Grievance Officer's Report attached as Unmarked Exhibit to Complaint.) The plaintiff caught a cold and believes that he became ill on account of the inadequate bed covering. (Complaint, p. 8.)

## DISCUSSION

The defendants' motion for summary judgment will be granted in part and denied in part. The plaintiff has no actionable Eighth Amendment claim with respect to the conditions of his confinement; nor does he have a viable due process claim under the Fourteenth Amendment in connection with his placement in investigative segregation. However, because material facts are in dispute, a trier of fact must determine whether the defendants retaliated against the plaintiff for filing grievances. The plaintiff is ordered to

show cause why his claim of discrimination based on his race or ethnicity should not be dismissed for failure to exhaust administrative remedies with respect to that claim.

## I. CONDITIONS

The Eighth Amendment imposes on prison officials the duty to "provide humane conditions of confinement. . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). However, prison conditions violate the Eighth Amendment only when they exceed "contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994), *citing Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

In order to establish Eighth Amendment liability, a plaintiff must meet two requirements: first, he must show that the challenged conditions of confinement were objectively so serious as to amount to the denial of a basic human need; second, he must show that the defendant official acted with deliberate indifference. *Farmer*, 511 U.S. at 834. As the Court of Appeals has explained, "the Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only to that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). In this case, Plaintiff has not satisfied the objective prong required for Eighth Amendment liability.

## A. Inoperative Light

The lack of a working light in the plaintiff's cell did not exceed "contemporary bounds of decency." It is inexcusable that the defendants, for at least seven months, failed to address the plaintiff's complaints that he had no light in his cell. Nevertheless, while the cell itself had no working light, the defendant Griffin's exhibit and the photos submitted as exhibits establish that large overhead light fixtures illuminated the entire cell area [although the plaintiff disputes how much light passed into the interior of his cell]. Furthermore, because the housing unit was non-disciplinary, the plaintiff presumably would not have been confined to his cell during most of the day. [At his deposition, he mentioned going to meals and the gym.]

Given that the totality of the plaintiff's conditions of confinement were otherwise acceptable [there is no allegation that his basic needs were not being met], the lack of an overhead light fails to fall so far below minimum standards as to violate the Eighth Amendment. The matter does not rise to the level of cruel and unusual punishment. *Contrast Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("inmates cannot expect the amenities, conveniences and services of a good hotel"), with *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (objective component met where prison conditions were "strikingly reminiscent of the Black Hole of Calcutta").

As an additional bar to recovery, because the plaintiff suffered no real physical injury–only understandable frustration–he has no compensable damages under the Civil

Rights Act. The Prison Litigation Reform Act dictates that "[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997) (upholding the constitutionality of 1997e(e)). *See generally, Robinson v. Page*, 170 F.3d 747 (7th Cir. 1999). An optometrist has submitted an affidavit attesting that poor lighting would not have adversely affected the plaintiff's eyesight. The plaintiff is not entitled to damages for going without an interior cell light.

Even assuming that the headaches the plaintiff claims to have suffered on account of the inadequate lighting amounted to a physical injury, the defendants are entitled to qualified immunity. Under the doctrine of qualified immunity, state officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). To evaluate a claim of qualified immunity, the court must engage in a two-step analysis. First, the court determines whether the plaintiff's claim states a violation of his constitutional rights. The court then determines whether those rights were clearly established at the time the alleged violation occurred. *See Wilson*, 526 U.S. at 609; *Khuans v. Sch. Dist. 110*, 123 F.3d

1010, 1013 (7th Cir. 1997). Only if the rights were clearly established may the official be liable for monetary damages. *See Richardson v. McKnight*, 521 U.S. 399, 403 (1997)

As recently as March of last year, a fellow district judge noted that the law was "unsettled" and that "[n]o Seventh Circuit case has held that inadequate lighting can constitute a violation of a prisoner's Eighth Amendment rights." *Martin v. Snyder*, No. 00 C 0983, 2002 WL 484911, at *6 (N.D. Ill. Mar. 28, 2002). Under the circumstances of this case, where the plaintiff had ambient light and was able to spend time out of his cell, the defendants' failure to rectify the plaintiff's problem—w3ile certainly no cause for commendation—did not constitute conduct the unlawfulness of which would have been apparent in light of existing law. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). The defendants are entitled to qualified immunity on the plaintiff's Eighth Amendment claim because neither statutes nor case law have established a right of inmates to proper lighting in their cell. The defendants did not violate a clearly established right.

## B. No Running Water

The lack of running water likewise fails to rise to the level of constitutional magnitude. Again, the plaintiff's basic needs were met; there is no dispute that he was able to drink water at meals. (*See* Medera Deposition, *tr.* at 25.) In addition, the plaintiff specifically noted in his grievance that he bought bottles of water and was able to shower once a week. Nor is there any allegation that the plaintiff had no toilet facilities.

13

Furthermore, although the plaintiff asserts that he suffered from dehydration, his medical records reflect no visits to the health care unit seeking treatment for dehydration. The plaintiff concedes that he was never ill enough to require medical treatment, although he insists that his dehydration caused severe discomfort. *See* Plaintiff's Local Rule 56.1(A)(3) Filing, ¶ 37; Plaintiff's Deposition, *tr.* 37, 42. Moreover, the plaintiff's physical activity during the time period in question belies his assertion that he was dehydrated: he conceded at his deposition that he had sufficient strength to play basketball and handball and lift weights. (*Id.*)

Under the circumstances of this case, no reasonable person could find that the denial of a cell with running water caused the plaintiff physical injury. It was surely chafing for the plaintiff to have his complaints go unaddressed. However, his confinement in a cell without running water, while undoubtedly inconvenient, is not actionable under 42 U.S.C. § 1983. *Compare Easter v. Cooper*, No. 91 C 4520, 1995 WL 109343, at *3 (N.D. Ill. Mar. 10, 1995) (inmate placed in a cell with graffiti and no running water for seven days had no cognizable constitutional claim); *contrast Johnson v. Pelker*, 891 F.2d 136, 139-40 (7th Cir. 1989) (leaving a prisoner in a cell for three days without running water, dry clothing, bedding, or cleaning supplies, and in which feces were smeared on the walls, may fall below the threshold of decency set by Eighth Amendment). In this case, the lack of running water did not threaten the plaintiff's physical or mental well-being.

## C. Denial of Bedding

For all of the same reasons discussed above, the denial of sheets, a pillow and blanket is not actionable as an Eighth Amendment claim. The deprivations were temporary: two weeks without sheets and a pillow and about five weeks without a blanket. Moreover, the denial of proper bedding was not coupled with extremely cold temperatures (the problem took place during the months of October and November and there is no allegation that the unit was improperly heated). *Compare Wrice v. Godinez*, No. 94 C 3427, 1996 WL 6563, at *1 (N.D. Ill. Jan. 5, 1996) (no liability for cold cell in the absence of conditions that had a "mutually reenforcing effect" causing the deprivation of a human need). The denial of bedding did not violate the plaintiff's constitutional rights and did not cause any real harm.

The claim must also fail because the plaintiff has failed to demonstrate any physical injury, as required by 42 U.S.C. § 1997e(e). It should be noted that the plaintiff's contention that he caught a cold due to the lack of bed covering is unsupported by medical evidence. The court is aware of no medical authority corroborating the plaintiff's apparent contention that sleeping without a blanket causes one to catch a cold.

## II. PLACEMENT IN ADMINISTRATIVE SEGREGATION

The plaintiff's placement and extended confinement in administrative segregation implicated no due process protections. It has long been recognized that prison officials are authorized to place inmates suspected of wrongdoing in administrative segregation

pending an investigation or until a hearing can be convened. *Hewitt v. Helms*, 459 U.S. 460 (1983). Illinois' prison regulations governing investigative segregation do not confer a liberty interest on prisoners to remain free of investigation segregation. *Cain v. Lane*, 857 F.2d 1139, 1144 (7th Cir. 1988). Neither an extension of investigative confinement nor a delay in completing an investigation violate an inmate's civil rights. *Oswalt v. Godinez*, 894 F.Supp. 1181, 1185-86 (N.D. Ill. 1995).

The plaintiff should have–and seems to say that he did not–receive a copy of the investigative report; he also should have–but evidently was not–charged or released within thirty days. Nevertheless, the plaintiff has no cognizable due process claim. It should be noted that violations of state statutes or prison regulations are not, in and of themselves, actionable as constitutional torts. *See, for example, Rowe v. DeBruyn*, 17 F.3d 1047, 1051 (7th Cir. 1994), *cert. denied*, 513 U.S. 1994 (1994). The procedural due process requirements of *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1976), extend only to disciplinary hearings and only then if the punishment imposed constitutes "an atypical or significant hardship in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1994).

Placement in administrative segregation is not an atypical or significant hardship. In *Williams v. Ramos*, 71 F. 3d 1246, 1249-50 (7th Cir. 1995), the Court of Appeals for this circuit held that conditions in the segregation unit at Stateville "do not greatly exceed what one could expect from prison life generally," and that the plaintiff had no liberty

interest in avoiding confinement there. Courts in this district have consistently held that confinement in segregation in an Illinois prison, under conditions prescribed by Illinois Department of Corrections regulations, is not an atypical and significant deprivation in relation to the ordinary incidents of prison life. *See, for example, Leslie v. Doyle*, 896 F. Supp. 771, 773 (N.D. Ill. 1995). Thus, the plaintiff cannot recover damages for his placement in investigative segregation on the grounds that the placement denied him due process.

## III. RETALIATION

Although the claims discussed above are not inherently actionable as constitutional violations, the plaintiff has articulated a colorable claim of retaliation. Contrary to the defendants' representations, it is well established that punishing an inmate for filing grievances violates his constitutional rights, even if the retaliatory action would not otherwise independently violate the Constitution. *See, e.g., Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

In this case, the plaintiff claims that the defendants refused to fix the problems in his cells because his grievances annoyed them. The defendants deny the plaintiff's charges, but viewing the evidence in the light most favorably to the plaintiff, a reasonable person could find that the plaintiff was the victim of retaliation. In his grievances, the plaintiff speculated whether he was the victim of retaliatory animus; in his sworn complaint, the plaintiff maintains that the defendants affirmatively stated that they were

going to punish him for filing so many grievances. The fact that the plaintiff went from one cell without a working light to another without working plumbing, that he alone out of three cellmates was singled out for not receiving sheets, that his requests for repairs went unaddressed so unreasonably and suspiciously long, that he was transferred to "condemned" cells, and that he was placed in segregation only days after the defendant King purportedly promised "to figure out a way" to do so, all could support the could conclusion that the plaintiff's protected activity was a substantial or motivating factor in the defendants' actions [or inaction]. While the defendants declare that the record fails to set forth a chronology of events from which retaliation could be inferred, *see, e.g., Abrams v. Walker*, 307 F.3d 650, 657 (7th Cir. 2002), the court disagrees.

Of course, in order to prevail on his claims, the plaintiff will ultimately have to establish by a preponderance of the evidence that the defendants' treatment would have been different absent any retaliatory motive. *See Babcock*, 102 F.3d at 275, *citing Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 287 (1977). The court questions why the plaintiff's grievances about problems with his cells would have so infuriated the defendants, who were not personally named in the grievances, punished for any transgressions, or burdened with the responsibility of making the necessary repairs.

Furthermore, for the disciplinary investigation to have been motivated by retaliatory animus, all of the correctional officers who wrote reports about the suspicious sequence of events on the recreation yard would have had to conspire together to fabricate

the incident and coordinate their accounts. None of the authors of the incident and investigatory reports are defendants in this case, nor is there any indication that they were the subjects of any grievance filed by the plaintiff. The plaintiff will have to prove that the named defendants were somehow behind the disciplinary investigation.

## IV. PERSONAL INVOLVEMENT

The defendants argue that they cannot be held personally responsible either for the problems with the plaintiff's cells or for his placement in administrative segregation. It is true that a plaintiff must establish a given defendant's direct, personal involvement in violating his constitutional rights. *See, e.g., Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). In addition, the defendants correctly point out that the doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). But as discussed above, the plaintiff has made an arguable showing that the alleged violations of his constitutional rights occurred at the named defendants' direction or with their knowledge and consent. *See Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997) (citations omitted).

It is irrelevant that actual repair work at the prison is performed by the maintenance staff rather than correctional officers themselves. The plaintiff contends that he made repeated requests for repairs to each of the defendants, who apparently either refused to place work orders or failed to follow through despite the plaintiff's persistent

requests and the passage of weeks. The plaintiff further charges that the defendants expressly promised to punish the plaintiff for his grievances, intentionally blocking any repairs and/or exposing him to different problems. At the very least, the defendants might have moved the plaintiff to a cell that needed no repairs (which he claims they did for other inmates). The plaintiff has made a triable showing that requests for work orders were unprocessed, that he was singled out for the denial of bedding, and that he was placed under a disciplinary investigation shortly after one of the defendants threatened to "find a way" to engineer his transfer to segregation.

Each of the defendants specifically denies any retaliatory animus, as well as any personal knowledge of or involvement in the problems the plaintiff was experiencing; however, the court cannot weigh the parties' affidavits or make credibility determinations when ruling on a motion for summary judgment. *Castillo v. United States*, 34 F.3d 443, 445 (7th Cir. 1994). A trier of fact must resolve the parties' conflicting stories.

## V. EQUAL PROTECTION

Throughout the complaint, the plaintiff charges that the defendants made offensive, xenophobic remarks such as that "Spics" do not enjoy plumbing in Central America. The court recognizes that the use of derogatory racial epithets, while "unprofessional and inexcusable," is not actionable under 42 U.S.C. § 1983. *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987). However, in this case the plaintiff contends not just that the defendants used offensive language, but that they mistreated him and

refused to address his complaints because he is Hispanic. Obviously, the Constitution protects persons of Latin American descent from discrimination by state officials. *See, e.g., Perez v. Lane*, 794 F. Supp. 286, 288 (C.D. Ill. 1992).

Nevertheless, the record does not make clear whether the plaintiff exhausted prison administrative remedies as to that claim. The Prison Litigation Reform Act of 1996 ("PLRA") contains a "comprehensive administrative exhaustion requirement" that states, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a); *see also Booth v. Churner*, 531 U.S. 956 (2001). The plaintiff did file grievances in connection with the matters discussed in preceding paragraphs. However, in reviewing those grievances, the court finds no mention whatsoever of the plaintiff's heritage, nor any references to racial slurs.[4] The plaintiff must accordingly show proof of exhaustion of administrative remedies with respect to his equal protection claims. Otherwise, the court cannot reach the substantive merit of the plaintiff's discrimination claim. *Accord, see Perez v. Wisconsin Department of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999).

---

[4] In fact, the plaintiff's failure to raise the specter of discrimination during the grievance process tends to cast doubt on his current allegations. It is surprising that, at the grievance stage, the plaintiff failed to mention the shocking remarks he now attributes to the defendants. But as noted above, the court will not resolve issues of credibility in ruling on a summary judgment motion.

In sum, for all of the foregoing reasons, summary judgment is granted in favor of the defendants and against the plaintiff on his conditions and due process claims. However, because material facts are in dispute, summary judgment is denied as to the plaintiff's retaliation claim. The plaintiff is granted twenty-one days to show proof of exhaustion of administrative remedies in connection with his equal protection claim.

As a final concern, the plaintiff's renewed motion for appointment of counsel is denied. Indigent parties in civil rights actions who are unable to obtain an attorney may apply to the court for appointment of counsel under 28 U.S.C. § 1915(e)(1). *See McKeever v. Israel*, 689 F.2d 1315, 1318 (7th Cir. 1982). However, civil litigants have no constitutional or statutory right to be represented by counsel in federal court. *See Merritt v. Faulkner*, 697 F.2d 761, 763 (7th Cir. 1983); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995). The decision to appoint counsel lies within the broad discretion of the court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992).

In exercising its discretion, a district court is guided by several factors: (1) the merit of the indigent plaintiff's claims; (2) the plaintiff's ability to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed if both sides are represented by counsel; (4) the capability of the indigent litigant to present the case; and (5) the complexity of the legal issues raised. *Swofford v. Maxwell*, 969 F.2d 547, 551 (7th Cir. 1992), *relying on Merritt v. Faulkner*, 697 F.2d 761, 764 (7th Cir. 1983); *see also Maclin v. Freake*, 650 F.2d 885, 887-89 (7th Cir. 1981) (*inter*

*alia*). "[O]nly when the cases are colorable, the facts may be difficult to assemble, and the law is complex" will judges request an attorney to assist the litigant. *DiAngelo v. Illinois Dept. of Public Aid*, 891 F.2d 1260, 1262 (7th Cir. 1989). As an additional threshold consideration, a litigant seeking appointment of *pro bono* counsel must show that he has made a reasonable attempt to retain private counsel, or that he is effectively precluded from making such efforts. *Jackson*, 953 F.2d at 1072.

After considering the above factors, the court concludes that appointment of counsel is not warranted in this case. Although the plaintiff has articulated a colorable retaliation claim, he has alleged no physical or mental disability that might preclude him from adequately investigating the facts giving rise to his complaint. *See Merritt*, 697 F.2d at 765. Neither the legal issues raised in the complaint nor the evidence that might support the plaintiff's claims are so complex or intricate that a trained attorney is necessary. The plaintiff appears more than capable of presenting his case. It should additionally be noted that the court grants *pro se* litigants wide latitude in the handling of their lawsuits. Therefore, the plaintiff's motion to reconsider appointment of appointment of counsel will be denied.

## CONCLUSION

IT IS THEREFORE ORDERED that:

(1) The defendants' motion to strike [#43-1] the plaintiff's brief opposing summary judgment is denied.

(2) The clerk is directed to terminate the defendants' motion for an extension of time to file a reply brief [#43-2], as that motion was previously granted.

(3) The plaintiff's motion for leave to amend [#45], which the court is treating as a motion to supplement his brief opposing summary judgment, is granted.

(4) The defendants' motion for summary judgment [#27] is granted in part and denied in part. At the close of the case, the clerk is directed to enter judgment in favor of the defendants and against the plaintiff on his conditions and due process claims pursuant to Fed. R. Civ. P. 56. The plaintiff may proceed on his retaliation claim, however.

(5) The plaintiff's motion to reconsider appointment of counsel [#36] is denied.

(6) The plaintiff is ordered to show good cause in writing why his equal protection claim should not be dismissed pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies prior to bringing suit. Failure to show cause within twenty-one days will result in summary dismissal of the plaintiff's claim that he was treated differently than other inmates because he is of Hispanic descent.

ENTER: _January 14, 2003_

_Harry D. Leinenweber_

**Harry D. Leinenweber**

**United States District Judge**